# Third District Court of Appeal
## State of Florida

Opinion filed July 15, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D25-0562
Lower Tribunal No. 24-7581-CA-01
_____

**Miccosukee Tribe of Indians of Florida,**
Appellant,

vs.

**Miami-Dade County,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Mavel Ruiz, Judge.

Kula & Associates, P.A., and Elliot B. Kula and Elaine D. Walter; Christopher Ajizian, P.A., and Christopher Ajizian; Todd R. Friedman, P.A., and Todd R. Friedman, for appellant.

Geraldine Bonzon-Keenan, Miami-Dade County Attorney, Christopher J. Wahl and Luis M. Reyes and Christian Sanchez Leon, Assistant County Attorneys, for appellee.

Before FERNANDEZ, LOGUE, and LINDSEY, JJ.

LINDSEY, J.

Appellant, The Miccosukee Tribe of Indians of Florida (the "Tribe"), appeals an order dismissing a declaratory judgment action brought against Miami-Dade County ("the County"). For the reasons set forth below, we reverse.

## I. BACKGROUND

By way of background, in 1989, the federal government conveyed a 115-acre parcel of land in unincorporated Miami-Dade County (the "Property") to the County subject to a deed restriction and reverter that restricted the Property's use to correctional purposes. The County never operated the Property for correctional purposes.

In 1998, the Miami-Dade Department of Corrections ("MDCR") leased the Property to the State of Florida Department of Children and Families ("DCF"). DCF constructed and operated a youth treatment facility on the Property. In 2019, the Miami-Dade County Homeless Trust, an agency and instrumentality of Miami-Dade County, began planning a project to benefit special needs people experiencing homelessness (the "Project").[1] The Homeless Trust recommended the Property as the Projects' site.

---

[1] Although DCF eventually ceased its operations and returned the Property to the County, if the Homeless Trust were to repurpose the facility for the Project, the County would need the federal government to release the deed restriction.

In October 2022, the County Commission therefore adopted a resolution (the "2022 Resolution"). The 2022 Resolution authorized the County Mayor to execute a real estate transaction with the federal government where the federal government would release the deed restriction and waive its reversionary rights in exchange for the County's payment of a sum representing the appraised value of the Property when it was conveyed to the County. The 2022 Resolution also approved over $11 million in funding, both for the transaction and for anticipated facility improvements in furtherance of the Project.

Thereafter, the Homeless Trust sought guidance from the County's Assistant Director of Planning for the County's Department of Regulatory and Economic Resources regarding the County's Comprehensive Development Master Plan ("CDMP")[2] and any applicable zoning process. The County's Assistant Director issued a letter in December 2022 (the "Planning Letter")

---

[2] The CDMP is "[a] local comprehensive land use plan," which "is a statutorily mandated legislative plan to control and direct the use and development of property within [the County.]" Machado v. Musgrove, 519 So. 2d 629, 632–33 (Fla. 3d DCA 1987) (citing § 163.3167(1), Fla. Stat. (1985)). The plan accomplishes this goal, in relevant part, by setting forth a "future land use plan element," which contains a "future land use map and goals, policies, and measurable objectives to guide future land use decisions." Bd. of Cnty. Comm'rs of Brevard Cnty. v. Snyder, 627 So. 2d 469, 473 (Fla. 1993). Once a plan is adopted, "all development orders approved by local governments must be consistent with the adopted local plan." Id.

3

opining that the Project's proposed land use "is an institutional use and can be considered for approval . . . if compatible" and would therefore be "consistent with the CDMP." The Planning letter also referred to the governmental facilities approval process.[3]

The Planning Letter advised that the Property was already subject to a prior governmental facility approval for institutional use—the correctional facility. Therefore, the Planning letter advised that the Project's proposed institutional use would be consistent with, and within the scope of, the prior approval. The Planning letter also advised that "[w]hen plans are completed for the renovation of the building, those plans should be submitted . . . for a review of a 'administrative approval for a non-substantial change' to the existing Government Facility approval." But the Planning letter concluded with the following caveat: "This letter is provided in response to your request for interpreting the provisions of the CDMP and *does not constitute a departmental recommendation on any pending or future requests for development approval*." (emphasis added).

In 2023, the County Commission adopted another resolution (the "2023 Resolution"), which approved $2 million in bond funding for facility improvements in furtherance of the Project and amended the 2022

---

[3] The governmental facilities approval process is set forth in section 33-303(b) of The Code of Miami-Dade County, Florida ("County Code").

Resolution to authorize some of those authorized expenditures to be pulled from bond funds.

As the Planning Letter explained, construction and operation of the Project would need to be approved through the governmental facilities approval process set forth in section 33-303(b) of the County Code. This process provides an alternative to the County's zoning approval process when the County seeks to construct or operate a governmental facility. The procedure generally requires the County Commission to, among other things, provide appropriate notice to the public, hold a public hearing, and then issue a decision. See County Code § 33-303(b)(2).

Additionally, once a governmental facility has been approved under the public hearing process, subsequent changes to the facility may be approved administratively, so long as the changes are "non-substantial." See County Code § 33-303(b)(6). This administrative approval must be made by the Director of the Department of Regulatory and Economic Resources after considering the factors in subsection (b)(6). See id.

In April 2024, while the Project had not yet received a formal development order, the Tribe filed a one count complaint against the County for declaratory relief. The Tribe alleged that the County violated Florida law when it passed certain resolutions permitting the construction of the Project outside of the County's Urban Development Boundary (the "UBD") adjacent

5

to Tribe-owned property. Particularly, the Tribe alleged that the 2022 and 2023 Resolutions violated the County Code and CDMP because they authorized funding for the construction and operation of the Project without properly changing the Property's permitted use.

The County moved to dismiss arguing the Tribe's claims fell into three categories, all requiring dismissal: (1) the County used an administrative approval process, the statutes under which the Tribe sought relief were facially unapplicable to the administrative process, and the Tribe failed to allege a special injury to attain standing; (2) a consistency challenge under section 163.3215 is only allowed for development orders, the complaint contained no allegations that the County's actions constituted a development order, and, even if it did, any challenge to the consistency of a development order was time-barred; and (3) no due process violation occurred because the County held a public hearing.

The Tribe responded arguing, as a threshold matter, the trial court was bound to the four corners rule in determining the motion to dismiss. As such, the Tribe contended it sought declaratory judgment action on the basis that the County's Resolutions were tantamount to a development order.[4]

---

[4] Section 163.3164(15), Florida Statutes (2024) defines "development order" as "any order granting, denying, or granting with conditions an application for a development permit." And section 163.3164(16), Florida Statutes (2024) defines "development permit" as "any building permit, zoning permit,

6

As to the complaint itself, the Tribe argued it contained well-pled allegations for declaratory relief on the County's improper use of its comprehensive plan and code to circumvent the County's obligations under Florida law. The Tribe also argued it had standing given its status as an adjacent landowner and the County's failure to give it notice required under section 33-303.[5]

After a hearing, on February 28, 2025, the trial court "dismisse[d] the action, without prejudice, for Plaintiff to re-file once consistency review has ripened." Twelve days later, on March 12, 2025, the Tribe moved under Florida Rule of Civil Procedure 1.140 to extend the time to file its first amended complaint. The County opposed the extension request, noting the "consistency review" had not "ripened" so that an amendment could not be articulated. The trial court denied the Tribe's request relying on its ruling that an action could be "re-file[d] once consistency review has ripened." On March 28, 2025, the trial court directed the clerk to close the case, clarifying that its "order of dismissal did not authorize or require an amended pleading

---

subdivision approval, rezoning, certification, special exception, variance, or any other official action of local government having the effect of permitting the development of land."

[5] The Tribe withdrew its allegations related to general bond procedures and voluntarily dismissed those declaratory judgment claims.

to be filed at this time, [the Tribe's] Motion must be denied." On March 31, 2025, this timely appeal followed.

## II.    ANALYSIS

Florida Rule of Civil Procedure 1.190 provides the right to amend the Tribe sought: "A party may amend a pleading once as a matter of course at any time before a responsive pleading is served[.]" See also Sarfaty v. M.S., 232 So. 3d 1074, 1082 n.12 (Fla. 3d DCA 2017) (discussing the "absolute right to amend the complaint before a responsive pleading is served"). Further, the County's motion to dismiss was not a responsive pleading and the Tribe had not yet exercised its absolute right to amend it once. See Boca Burger, Inc. v. Forum, 912 So. 2d 561, 567 (Fla. 2005) (citing Fla. R. Civ. P. 1.100(a)) ("[T]he filing of a motion to dismiss does not terminate a plaintiff's absolute right to amend the complaint 'once as a matter of course.'"); Galvez v. CIT Bank, 407 So. 3d 522, 524 (Fla. 3d DCA 2025), reh'g denied (Mar. 27, 2025) (quotation omitted) ("[A] motion to dismiss is not a 'responsive pleading' because it is not a 'pleading' under the rules.").

Therefore, we find the trial court did not have discretion to deny the Tribe's request to file its first amended complaint. See Grove Isle Ass'n, Inc. v. Grove Isle Associates, LLLP, 137 So. 3d 1081, 1095 (Fla. 3d DCA 2014) (quotation omitted) ("[A] trial court does not have discretion to deny leave to amend on the basis that the complaint is not amendable until (1) the

8

defendant has filed an answer or (2) the plaintiff has already exercised the right to amend once."); <u>Bronstein v. Progressive Am. Ins. Co.</u>, 338 So. 3d 966, 968 n.2 (Fla. 3d DCA 2022) (citation omitted) (explaining the "right of plaintiff under rule 1.190(a) to amend complaint once before service of responsive pleading is automatic and absolute, and trial court has no discretion to deny such amendment"); <u>see also</u> <u>Solonenko v. Vogue Properties, LLC</u>, 192 So. 3d 87 (Fla. 4th DCA 2016) (emphasis in original) ("While appellee argues amendment of the complaint would be futile, appellant has the right to amend her complaint, ***even if*** it appears likely that the amended complaint would be meritless."); <u>Williams v. Gaffin Indus. Services, Inc.</u>, 88 So. 3d 1027, 1030 (Fla. 2d DCA 2012) ("[R]ule 1.190(a) and <u>Boca Burger, Inc.</u> clearly provide that the trial court could not deny [Appellant's] request to amend the complaint based on [Appellee's] argument that an amendment would have been futile."). Accordingly, we are constrained to reverse and remand for proceedings consistent herewith.[6]

Reversed and remanded.

---

[6] We express no opinion on the merits of the Tribe's declaratory relief action or on any of the other issues raised in this appeal.